**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

Alearis, Inc.,

          Plaintiff,

   v.

The United States,

          Defendant.

Case No.: 1:20-cv-808T

Honorable Lydia K. Griggsby

# APPENDIX VOL. 1

## TO

## PLAINTIFF'S MEMORANDUM OF LAW

## IN SUPPORT OF

## MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

# TABLE OF CONTENTS

## I.      STATUTES

5 U.S.C. § 551(13) – Definitions ......................................................................................... 1

5 U.S.C. § 555(e) - Ancillary Matters ................................................................................. 1

5 U.S.C. § 706(1)-(2) - Scope of Review ............................................................................ 1

26 U.S.C. § 107 - Rental Value of Parsonages .................................................................... 2

26 U.S.C. § 170(b)(1)(A)(i) - Charitable, Etc., Contributions and Gifts ............................ 2

26 U.S.C. § 414(c)(2), (e) - Definitions and Special Rules .............................................. 2-6

26 U.S.C. § 501(c)(3), (h)(5)(A) - Exemption From Tax on Corporations, Certain trusts, etc ........ 6

26 U.S.C. § 508(c)(1)(A) - Special Rules With Respect to Section 501(c)(3) Organizations ...... 8-9

26 U.S.C. § 509(a)(1)-(4) - Private Foundation defined ................................................. 9-10

26 U.S.C. § 642(c) - Special Rules for Credits and Deductions .................................... 10-11

26 U.S.C. § 3306(c)(8) – Definitions ................................................................................. 11

26 U.S.C. § 4940(a)-(b) - Excise Tax Based on Investment Income ................................... 12

26 U.S. Code § 4942(a)-(b) - Taxes on Failure to Distribute Income ................................ 12

26 U.S.C. § 4943(a)-(b) - Taxes on Excess Business Holdings ......................................... 13

§§4991 to 4994. Repealed. Pub. L. 100–418, title I, §1941(a), Aug. 23, 1988, 102 Stat. 1322 ..... 13

26 U.S.C. § 7428 - Declaratory Judgments Relating to Status and Classification of
Organizations Under Section 501(c)(3), etc ................................................................. 13-14

28 U.S.C. § 1507.Jurisdiction for Certain Declaratory Judgments ................................... 14

820 Ill. Comp. Stat. Ann. 405/211.3 (820 ILCS 405/211.3) ...................................... 14-15

## II.      REGULATIONS

26 C.F.R. § 1.511-2(a)(3)(ii) - Organizations Subject to Tax ........................................... 16

26 C.F.R § 1.509(a)-4(a)(1), (i)(4) - Supporting Organizations .................................... 17-19

26 C.F.R. § 301.7701-1(a)(4) - Classification of Organizations for Federal Tax Purposes ...... 19-20

26 C.F.R. § 301.7701-2(a) - Business Entities; Definitions ............................................... 20

26 C.F.R. § 301.7701-3(b)(1)(ii) - Business Entities; Definitions ..................................... 21

26 C.F.R. § 601.601 (d)(2) - Rules and Regulations ................................................... 20-21

## III.      OTHER IRS AUTHORITIES

Rev. Proc. 2019-05, IRB 2019-1, 232 ............................................................................... 22

Rev. Proc. 2019-05, IRB 2019-1, 235 ..................................................................................22

Rev. Proc. 2019-05, IRB 2019-1, 239 ..................................................................................22

Rev. Proc. 2019-05, IRB 2019-1, 240-241 ......................................................................23-24

Rev. Proc. 2019-05, IRB 2019-1, 243-244 ......................................................................24-25

Rev. Proc. 2019-05, IRB 2019-1, 253 ............................................................................25-26

IRS Priv. Ltr. Rul. 85-08-070 (1984) ..............................................................................27-28

IRS Priv. Ltr Rul. 86-24-126 (1986) ...............................................................................29-30

Rev. Rul. 74-224, 1974-1 C. B. 61 ......................................................................................31

I.R.S. Tech.Adv.Mem. 2004-37-040 (June 7, 2004) .......................................................32-34

## IV.    COURT OF FEDERAL CLAIMS & U.S. TAX COURT RULES OF PRACTICE

RCFC 52.1 (c) - Rule of Federal Court of Claims 52.1. Administrative Record ..........................35

Tax Court Rule 142(a)(1) ...............................................................................................35-36

Tax Court Rule 210(b)(12) .............................................................................................39-40

Tax Court Rule 217(a)-(b) ..............................................................................................40-41

## V.    LEGISLATIVE HISTORY

S. Rep. No. 94-938, 94th Cong., 2d Sess. 588 (1975),
U.S.CodeCong.&Ad.News1976,2897,4012...........................................................................42-43

## I.    STATUTES

### 5 U.S.C. § 551(13) - Definitions

For the purpose of this subchapter—

\*    \*    \*

(13) "agency action" includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act; and

### 5 U.S.C. § 555(e) - Ancillary Matters

\*    \*    \*

(e) Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.

### 5 U.S.C. § 706(1)-(2) - Scope of Review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege, or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D) without observance of procedure required by law;

    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

**26 U.S.C. § 107 - Rental Value of Parsonages**

In the case of a minister of the gospel, gross income does not include—

(1) the rental value of a home furnished to him as part of his compensation; or

(2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home and to the extent such allowance does not exceed the fair rental value of the home, including furnishings and appurtenances such as a garage, plus the cost of utilities.

**26 U.S.C. § 170(b)(1)(A)(i) - Charitable, Etc., Contributions and Gifts**

(a) Allowance of deduction

(1) General rule

There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary.

\*   \*   \*

(b) Percentage limitations

(1) Individuals

In the case of an individual, the deduction provided in subsection (a) shall be limited as provided in the succeeding subparagraphs.

(A) General rule

Any charitable contribution to—

(i) a church or a convention or association of churches,

\*   \*   \*

**26 U.S.C. § 414(c)(2), (e) - Definitions and Special Rules**

(c) Employees of partnerships, proprietorships, etc., which are under common control

(1) In general

Except as provided in paragraph (2), for purposes of sections 401, 408(k), 408(p), 410, 411, 415, and 416, under regulations prescribed by the Secretary, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer. The regulations prescribed under this subsection shall be based on principles similar to the principles which apply in the case of subsection (b).

(2) Special rules relating to church plans

(A)General rule

Except as provided in subparagraphs (B) and (C), for purposes of this subsection and subsection (m), an organization that is otherwise eligible to participate in a church plan shall not be aggregated

with another such organization and treated as a single employer with such other organization for a plan year beginning in a taxable year unless—

(i) one such organization provides (directly or indirectly) at least 80 percent of the operating funds for the other organization during the preceding taxable year of the recipient organization, and

(ii) there is a degree of common management or supervision between the organizations such that the organization providing the operating funds is directly involved in the day-to-day operations of the other organization.

(B) Nonqualified church-controlled organizations

Notwithstanding subparagraph (A), for purposes of this subsection and subsection (m), an organization that is a nonqualified church-controlled organization shall be aggregated with 1 or more other nonqualified church-controlled organizations, or with an organization that is not exempt from tax under section 501, and treated as a single employer with such other organization, if at least 80 percent of the directors or trustees of such other organization are either representatives of, or directly or indirectly controlled by, such nonqualified church-controlled organization. For purposes of this subparagraph, the term "nonqualified church-controlled organization" means a church-controlled tax-exempt organization described in section 501(c)(3) that is not a qualified church-controlled organization (as defined in section 3121(w)(3)(B)).

(C) Permissive aggregation among church-related organizations

The church or convention or association of churches with which an organization described in subparagraph (A) is associated (within the meaning of subsection (e)(3)(D)), or an organization designated by such church or convention or association of churches, may elect to treat such organizations as a single employer for a plan year. Such election, once made, shall apply to all succeeding plan years unless revoked with notice provided to the Secretary in such manner as the Secretary shall prescribe.

(D) Permissive disaggregation of church-related organizations

For purposes of subparagraph (A), in the case of a church plan, an employer may elect to treat churches (as defined in section 403(b)(12)(B)) separately from entities that are not churches (as so defined), without regard to whether such entities maintain separate church plans. Such election, once made, shall apply to all succeeding plan years unless revoked with notice provided to the Secretary in such manner as the Secretary shall prescribe.

\*   \*   \*

(e) Church plan

(1) In general

For purposes of this part, the term "church plan" means a plan established and maintained (to the extent required in paragraph (2)(B)) for its employees (or their benefici-aries) by a church or by a convention or association of churches which is exempt from tax under section 501.

(2) Certain plans excluded

The term "church plan" does not include a plan—

(A) which is established and maintained primarily for the benefit of employees (or their beneficiaries) of such church or convention or association of churches who are employed in

3

connection with one or more unrelated trades or businesses (within the meaning of section 513); or

(B) if less than substantially all of the individuals included in the plan are individuals described in paragraph (1) or (3)(B) (or their beneficiaries).

(3) Definitions and other provisions

For purposes of this subsection—

(A) Treatment as church plan

A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

(B) Employee defined

The term employee of a church or a convention or association of churches shall include—

(i) a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry, regardless of the source of his compensation;

(ii) an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 and which is controlled by or associated with a church or a convention or association of churches; and

(iii) an individual described in subparagraph (E).

(C) Church treated as employer

A church or a convention or association of churches which is exempt from tax under section 501 shall be deemed the employer of any individual included as an employee under subparagraph (B).

(D) Association with church

An organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches.

(E) Special rule in case of separation from plan

If an employee who is included in a church plan separates from the service of a church or a convention or association of churches or an organization described in clause (ii) of paragraph (3)(B), the church plan shall not fail to meet the requirements of this subsection merely because the plan—

(i) retains the employee's accrued benefit or account for the payment of benefits to the employee or his beneficiaries pursuant to the terms of the plan; or

(ii) receives contributions on the employee's behalf after the employee's separation from such service, but only for a period of 5 years after such separation, unless the employee is disabled (within the meaning of the disability provisions of the church plan or, if there are no such

provisions in the church plan, within the meaning of section 72(m)(7)) at the time of such separation from service.

(4) Correction of failure to meet church plan requirements

(A) In general

If a plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 fails to meet one or more of the requirements of this subsection and corrects its failure to meet such requirements within the correction period, the plan shall be deemed to meet the requirements of this subsection for the year in which the correction was made and for all prior years.

(B) Failure to correct

If a correction is not made within the correction period, the plan shall be deemed not to meet the requirements of this subsection beginning with the date on which the earliest failure to meet one or more of such requirements occurred.

(C) Correction period defined

The term "correction period" means—

(i) the period, ending 270 days after the date of mailing by the Secretary of a notice of default with respect to the plan's failure to meet one or more of the requirements of this subsection;

(ii) any period set by a court of competent jurisdiction after a final determination that the plan fails to meet such requirements, or, if the court does not specify such period, any reasonable period determined by the Secretary on the basis of all the facts and circumstances, but in any event not less than 270 days after the determination has become final; or

(iii) any additional period which the Secretary determines is reasonable or necessary for the correction of the default,

whichever has the latest ending date.

(5) Special rules for chaplains and self-employed ministers

(A) Certain ministers may participate

For purposes of this part—

(i)In general

A duly ordained, commissioned, or licensed minister of a church is described in paragraph (3)(B) if, in connection with the exercise of their ministry, the minister—

(I) is a self-employed individual (within the meaning of section 401(c)(1)(B), or

(II) is employed by an organization other than an organization which is described in section 501(c)(3) and with respect to which the minister shares common religious bonds.

(ii) Treatment as employer and employee

For purposes of sections 403(b)(1)(A) and 404(a)(10), a minister described in clause (i)(I) shall be treated as employed by the minister's own employer which is an organization described in section 501(c)(3) and exempt from tax under section 501(a).

(B) Special rules for applying section 403(b) to self-employed ministers

In the case of a minister described in subparagraph (A)(i)(I)—

(i) the minister's includible compensation under section 403(b)(3) shall be determined by reference to the minister's earned income (within the meaning of section 401(c)(2)) from such ministry rather than the amount of compensation which is received from an employer, and

(ii) the years (and portions of years) in which such minister was a self-employed individual (within the meaning of section 401(c)(1)(B)) with respect to such ministry shall be included for purposes of section 403(b)(4).

(C) Effect on non-denominational plans

If a duly ordained, commissioned, or licensed minister of a church in the exercise of his or her ministry participates in a church plan (within the meaning of this section) and in the exercise of such ministry is employed by an employer not otherwise participating in such church plan, then such employer may exclude such minister from being treated as an employee of such employer for purposes of applying sections 401(a)(3), 401(a)(4), and 401(a)(5), as in effect on September 1, 1974, and sections 401(a)(4), 401(a)(5), 401(a)(26), 401(k)(3), 401(m), 403(b)(1)(D) (including section 403(b)(12)), and 410 to any stock bonus, pension, profit-sharing, or annuity plan (including an annuity described in section 403(b) or a retirement income account described in section 403(b)(9)). The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purpose of, and prevent the abuse of, this subparagraph.

(D) Compensation taken into account only once

If any compensation is taken into account in determining the amount of any contributions made to, or benefits to be provided under, any church plan, such compensation shall not also be taken into account in determining the amount of any contributions made to, or benefits to be provided under, any other stock bonus, pension, profit-sharing, or annuity plan which is not a church plan.

(E) Exclusion

In the case of a contribution to a church plan made on behalf of a minister described in subparagraph (A)(i)(II), such contribution shall not be included in the gross income of the minister to the extent that such contribution would not be so included if the minister was an employee of a church.

## 26 U.S.C. § 501(c)(3), (h)(5)(A) - Exemption From Tax on Corporations, Certain trusts, etc.

(a) Exemption from taxation

An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

(b) Tax on unrelated business income and certain other activities

An organization exempt from taxation under subsection (a) shall be subject to tax to the extent provided in parts II, III, and VI of this subchapter, but (notwithstanding parts II, III, and VI of this subchapter)

shall be considered an organization exempt from income taxes for the purpose of any law which refers to organizations exempt from income taxes.

(c) List of exempt organizations

The following organizations are referred to in subsection (a):

(1) Any corporation organized under Act of Congress which is an instrumentality of the United States but only if such corporation—

(A) is exempt from Federal income taxes—

(i) under such Act as amended and supplemented before July 18, 1984, or

(ii) under this title without regard to any provision of law which is not contained in this title and which is not contained in a revenue Act, or

(B) is described in subsection (l).

(2) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt under this section. Rules similar to the rules of subparagraph (G) of paragraph (25) shall apply for purposes of this paragraph.

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

\*   \*   \*

(h) Expenditures by public charities to influence legislation

(1) General rule

In the case of an organization to which this subsection applies, exemption from taxation under subsection (a) shall be denied because a substantial part of the activities of such organization consists of carrying on propaganda, or otherwise attempting, to influence legislation, but only if such organization normally—

(A) makes lobbying expenditures in excess of the lobbying ceiling amount for such organization for each taxable year, or

(B)makes grass roots expenditures in excess of the grass roots ceiling amount for such organization for each taxable year.

(2) Definitions

For purposes of this subsection—

(A) Lobbying expenditures

The term "lobbying expenditures" means expenditures for the purpose of influencing legislation (as defined in section 4911(d)).

7

(B) Lobbying ceiling amount

The lobbying ceiling amount for any organization for any taxable year is 150 percent of the lobbying nontaxable amount for such organization for such taxable year, determined under section 4911.

(C) Grass roots expenditures

The term "grass roots expenditures" means expenditures for the purpose of influencing legislation (as defined in section 4911(d) without regard to paragraph (1)(B) thereof).

(D) Grass roots ceiling amount

The grass roots ceiling amount for any organization for any taxable year is 150 percent of the grass roots nontaxable amount for such organization for such taxable year, determined under section 4911.

(3) Organizations to which this subsection applies

This subsection shall apply to any organization which has elected (in such manner and at such time as the Secretary may prescribe) to have the provisions of this subsection apply to such organization and which, for the taxable year which includes the date the election is made, is described in subsection (c)(3) and—

(A) is described in paragraph (4), and

(B) is not a disqualified organization under paragraph (5).

(4) Organizations permitted to elect to have this subsection apply

An organization is described in this paragraph if it is described in—

(A) section 170(b)(1)(A)(ii) (relating to educational institutions),

(B) section 170(b)(1)(A)(iii) (relating to hospitals and medical research organizations),

(C) section 170(b)(1)(A)(iv) (relating to organizations supporting government schools),

(D) section 170(b)(1)(A)(vi) (relating to organizations publicly supported by charitable contributions),

(E) section 170(b)(1)(A)(ix) (relating to agricultural research organizations),

(F) section 509(a)(2) (relating to organizations publicly supported by admissions, sales, etc.), or

(G) section 509(a)(3) (relating to organizations supporting certain types of public charities) except that for purposes of this subparagraph, section 509(a)(3) shall be applied without regard to the last sentence of section 509(a).

(5) Disqualified organizations

For purposes of paragraph (3) an organization is a disqualified organization if it is—

(A) described in section 170(b)(1)(A)(i) (relating to churches),

(B) an integrated auxiliary of a church or of a convention or association of churches, or

(C) a member of an affiliated group of organizations (within the meaning of section 4911(f)(2)) if one or more members of such group is described in subparagraph (A) or (B).

8

**26 U.S.C. § 508(c)(1)(A) - Special Rules With Respect to Section 501(c)(3) Organizations**

(a) New organizations must notify Secretary that they are applying for recognition of section 501(c)(3) status

Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)—

(1) unless it has given notice to the Secretary in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or

(2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.

(b) Presumption that organizations are private foundations

Except as provided in subsection (c), any organization (including an organization in existence on October 9, 1969) which is described in section 501(c)(3) and which does not notify the Secretary, at such time and in such manner as the Secretary may by regulations prescribe, that it is not a private foundation shall be presumed to be a private foundation.

(c) Exceptions

(1) Mandatory exceptions

Subsections (a) and (b) shall not apply to—

(A) churches, their integrated auxiliaries, and conventions or associations of churches, or

(B) any organization which is not a private foundation (as defined in section 509(a)) and the gross receipts of which in each taxable year are normally not more than $5,000.

(2) Exceptions by regulations

The Secretary may by regulations exempt (to the extent and subject to such conditions as may be prescribed in such regulations) from the provisions of subsection (a) or (b) or both—

(A) educational organizations described in section 170(b)(1)(A)(ii), and

(B) any other class of organizations with respect to which the Secretary determines that full compliance with the provisions of subsections (a) and (b) is not necessary to the efficient administration of the provisions of this title relating to private foundations.

**26 U.S.C. § 509(a)(1)-(4) - Private Foundation defined**

(a) General rule

For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501(c)(3) other than—

(1) an organization described in section 170(b)(1)(A) (other than in clauses (vii) and (viii));

(2) an organization which—

(A) normally receives more than one-third of its support in each taxable year from any combination of—

(i) gifts, grants, contributions, or membership fees, and

(ii) gross receipts from admissions, sales of merchandise, performance of services, or furnishing of facilities, in an activity which is not an unrelated trade or business (within the meaning of section 513), not including such receipts from any person, or from any bureau or similar agency of a governmental unit (as described in section 170(c)(1)), in any taxable year to the extent such receipts exceed the greater of $5,000 or 1 percent of the organization's support in such taxable year,

from persons other than disqualified persons (as defined in section 4946) with respect to the organization, from governmental units described in section 170(c)(1), or from organizations described in section 170(b)(1)(A) (other than in clauses (vii) and (viii)), and

(B) normally receives not more than one-third of its support in each taxable year from the sum of—

(i) gross investment income (as defined in subsection (e)) and

(ii) the excess (if any) of the amount of the unrelated business taxable income (as defined in section 512) over the amount of the tax imposed by section 511;

(3) an organization which—

(A) is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organizations described in paragraph (1) or (2),

(B) is—

(i) operated, supervised, or controlled by one or more organizations described in paragraph (1) or (2),

(ii) supervised or controlled in connection with one or more such organizations, or

(iii) operated in connection with one or more such organizations, and

(C) is not controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than foundation managers and other than one or more organizations described in paragraph (1) or (2); and

(4) an organization which is organized and operated exclusively for testing for public safety.

For purposes of paragraph (3), an organization described in paragraph (2) shall be deemed to include an organization described in section 501(c)(4), (5), or (6) which would be described in paragraph (2) if it were an organization described in section 501(c)(3).


## 26 U.S.C. § 642(c) - Special Rules for Credits and Deductions

\*   \*   \*

(c) Deduction for amounts paid or permanently set aside for a charitable purpose

(1) General rule

In the case of an estate or trust (other than a trust meeting the specifications of subpart B), there shall be allowed as a deduction in computing its taxable income (in lieu of the deduction allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid for a purpose specified in section 170(c) (determined without regard to section 170(c)(2)(A)). If a charitable contribution is paid after the close of such taxable year and on or before the last day of the year following the close of such taxable year, then the trustee or administrator may elect to treat such contribution as paid during such taxable year. The election shall be made at such time and in such manner as the Secretary prescribes by regulations.

(2) Amounts permanently set aside

In the case of an estate, and in the case of a trust (other than a trust meeting the specifications of subpart B) required by the terms of its governing instrument to set aside amounts which was—

(A) created on or before October 9, 1969, if—

(i) an irrevocable remainder interest is transferred to or for the use of an organization described in section 170(c), or

(ii) the grantor is at all times after October 9, 1969, under a mental disability to change the terms of the trust; or

(B) established by a will executed on or before October 9, 1969, if—

(i) the testator dies before October 9, 1972, without having republished the will after October 9, 1969, by codicil or otherwise,

(ii) the testator at no time after October 9, 1969, had the right to change the portions of the will which pertain to the trust, or

(iii) the will is not republished by codicil or otherwise before October 9, 1972, and the testator is on such date and at all times thereafter under a mental disability to republish the will by codicil or otherwise,

there shall also be allowed as a deduction in computing its taxable income any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance, or operation of a public cemetery not operated for profit. In the case of a trust, the preceding sentence shall apply only to gross income earned with respect to amounts transferred to the trust before October 9, 1969, or transferred under a will to which subparagraph (B) applies.

(3) Pooled income funds

In the case of a pooled income fund (as defined in paragraph (5)), there shall also be allowed as a deduction in computing its taxable income any amount of the gross income attributable to gain from the sale of a capital asset held for more than 1 year, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, permanently set aside for a purpose specified in section 170(c).

(4) Adjustments

To the extent that the amount otherwise allowable as a deduction under this subsection consists of gain described in section 1202(a), proper adjustment shall be made for any exclusion allowable to the estate or trust under section 1202. In the case of a trust, the deduction allowed by this subsection shall be subject to section 681 (relating to unrelated business income).

(5) Definition of pooled income fund

For purposes of paragraph (3), a pooled income fund is a trust—

(A) to which each donor transfers property, contributing an irrevocable remainder interest in such property to or for the use of an organization described in section 170(b)(1)(A) (other than in clauses (vii) or (viii)), and retaining an income interest for the life of one or more beneficiaries (living at the time of such transfer),

(B) in which the property transferred by each donor is commingled with property transferred by other donors who have made or make similar transfers,

(C) which cannot have investments in securities which are exempt from the taxes imposed by this subtitle,

(D) which includes only amounts received from transfers which meet the requirements of this paragraph,

(E) which is maintained by the organization to which the remainder interest is contributed and of which no donor or beneficiary of an income interest is a trustee, and

(F) from which each beneficiary of an income interest receives income, for each year for which he is entitled to receive the income interest referred to in subparagraph (A), determined by the rate of return earned by the trust for such year.

For purposes of determining the amount of any charitable contribution allowable by reason of a transfer of property to a pooled fund, the value of the income interest shall be determined on the basis of the highest rate of return earned by the fund for any of the 3 taxable years immediately preceding the taxable year of the fund in which the transfer is made. In the case of funds in existence less than 3 taxable years preceding the taxable year of the fund in which a transfer is made the rate of return shall be deemed to be 6 percent per annum, except that the Secretary may prescribe a different rate of return.

(6) Taxable private foundations

In the case of a private foundation which is not exempt from taxation under section 501(a) for the taxable year, the provisions of this subsection shall not apply and the provisions of section 170 shall apply.


## 26 U.S.C. § 3306(c)(8) - Definitions

(c) Employment

For purposes of this chapter, the term "employment" means any service performed prior to 1955, which was employment for purposes of subchapter C of chapter 9 of the Internal Revenue Code of 1939 under the law applicable to the period in which such service was performed, and (A) any service, of whatever nature, performed after 1954 by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, or (ii) on or in connection with an American vessel or American aircraft under a contract of service which is entered into within the United States or during the performance of which and while the employee is employed on the vessel or aircraft it touches at a port in the United States, if the employee is employed on and in connection with such vessel or aircraft when outside the United States, and (B) any service, of whatever nature, performed after 1971 outside the United States (except in a contiguous country with which the United States has an

agreement relating to unemployment compensation) by a citizen of the United States as an employee of an American employer (as defined in subsection (j)(3)), except—

\*   \*   \*

(8) service performed in the employ of a religious, charitable, educational, or other organization described in section 501(c)(3) which is exempt from income tax under section 501(a);

## 26 U.S.C. § 4940(a)-(b) - Excise Tax Based on Investment Income

(a) Tax-exempt foundations

There is hereby imposed on each private foundation which is exempt from taxation under section 501(a) for the taxable year, with respect to the carrying on of its activities, a tax equal to 1.39 percent of the net investment income of such foundation for the taxable year.

(b) Taxable foundations

There is hereby imposed on each private foundation which is not exempt from taxation under section 501(a) for the taxable year, with respect to the carrying on of its activities, a tax equal to—

(1) the amount (if any) by which the sum of (A) the tax imposed under subsection (a) (computed as if such subsection applied to such private foundation for the taxable year), plus (B) the amount of the tax which would have been imposed under section 511 for the taxable year if such private foundation had been exempt from taxation under section 501(a), exceeds

(2) the tax imposed under subtitle A on such private foundation for the taxable year.

## 26 U.S. Code § 4942 - Taxes on Failure to Distribute Income

(a) Initial tax

There is hereby imposed on the undistributed income of a private foundation for any taxable year, which has not been distributed before the first day of the second (or any succeeding) taxable year following such taxable year (if such first day falls within the taxable period), a tax equal to 30 percent of the amount of such income remaining undistributed at the beginning of such second (or succeeding) taxable year. The tax imposed by this subsection shall not apply to the undistributed income of a private foundation—

(1) for any taxable year for which it is an operating foundation (as defined in subsection (j)(3)), or

(2) to the extent that the foundation failed to distribute any amount solely because of an incorrect valuation of assets under subsection (e), if—

(A) the failure to value the assets properly was not willful and was due to reasonable cause,

(B) such amount is distributed as qualifying distributions (within the meaning of subsection (g)) by the foundation during the allowable distribution period (as defined in subsection (j)(2)),

(C) the foundation notifies the Secretary that such amount has been distributed (within the meaning of subparagraph (B)) to correct such failure, and

(D) such distribution is treated under subsection (h)(2) as made out of the undistributed income for the taxable year for which a tax would (except for this paragraph) have been imposed under this subsection.

(b) Additional tax

In any case in which an initial tax is imposed under subsection (a) on the undistributed income of a private foundation for any taxable year, if any portion of such income remains undistributed at the close of the taxable period, there is hereby imposed a tax equal to 100 percent of the amount remaining undistributed at such time.

## 26 U.S.C. § 4943(a)-(b) - Taxes on Excess Business Holdings

(a) Initial tax

(1) Imposition

There is hereby imposed on the excess business holdings of any private foundation in a business enterprise during any taxable year which ends during the taxable period a tax equal to 10 percent of the value of such holdings.

(2) Special rules

The tax imposed by paragraph (1)—

(A) shall be imposed on the last day of the taxable year, but

(B) with respect to the private foundation's holdings in any business enterprise, shall be determined as of that day during the taxable year when the foundation's excess holdings in such enterprise were the greatest.

(b) Additional tax

In any case in which an initial tax is imposed under subsection (a) with respect to the holdings of a private foundation in any business enterprise, if, at the close of the taxable period with respect to such holdings, the foundation still has excess business holdings in such enterprise, there is hereby imposed a tax equal to 200 percent of such excess business holdings.

## §§4991 to 4994. Repealed. Pub. L. 100–418, title I, §1941(a), Aug. 23, 1988, 102 Stat. 1322

Section 4991, added Pub. L. 96–223, title I, §101(a)(1), Apr. 2, 1980, 94 Stat. 235 ; amended Pub. L. 97–34, title VI, §§601(b)(1), 603(a), Aug. 13, 1981, 95 Stat. 336 , 338; Pub. L. 97–448, title II, §201(c), Jan. 12, 1983, 96 Stat. 2392 ; Pub. L. 99–514, title XVIII, §1879(h)(1), Oct. 22, 1986, 100 Stat. 2907 , related to taxable crude oil and categories of oil.

## 26 U.S.C. § 7428 - Declaratory Judgments Relating to Status and Classification of Organizations Under Section 501(c)(3), etc.

(a) Creation of remedy

In a case of actual controversy involving—

(1) a determination by the Secretary—

14

(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),

(B) with respect to the initial classification or continuing classification of an organization as a private foundation (as defined in section 509(a)),

(C) with respect to the initial classification or continuing classification of an organization as a private operating foundation (as defined in section 4942(j)(3)),

(D) with respect to the initial classification or continuing classification of a cooperative as an organization described in section 521(b) which is exempt from tax under section 521(a), or

(E) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c) (other than paragraph (3)) or 501(d) and exempt from tax under section 501(a), or

(2) a failure by the Secretary to make a determination with respect to an issue referred to in paragraph (1),

upon the filing of an appropriate pleading, the United States Tax Court, the United States Court of Federal Claims, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification or with respect to such initial classification or continuing classification. Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Federal Claims, as the case may be, and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification or continuing classification includes any revocation of or other change in a qualification or classification.

(b) Limitations

(1) Petitioner

A pleading may be filed under this section only by the organization the qualification or classification of which is at issue.

(2) Exhaustion of administrative remedies

A declaratory judgment or decree under this section shall not be issued in any proceeding unless the Tax Court, the Court of Federal Claims, or the district court of the United States for the District of Columbia determines that the organization involved has exhausted administrative remedies available to it within the Internal Revenue Service. An organization requesting the determination of an issue referred to in subsection (a)(1) shall be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination.

## 28 U.S.C. § 1507. Jurisdiction for Certain Declaratory Judgments

The United States Court of Federal Claims shall have jurisdiction to hear any suit for and issue a declaratory judgment under section 7428 of the Internal Revenue Code of 1986.

**820 Ill. Comp. Stat. Ann. 405/211.3** (820 ILCS 405/211.3)

Sec. 211.3. For the purpose of Section 211.2, the term "employment" shall not include services performed

A. In the employ of (1) a church or convention or association of churches, or (2) an organization or school which is not an institution of higher education, which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches;

B. By a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order;

C. Prior to January 1, 1978, in the employ of a school which is not an institution of higher education;

D. In a facility conducted for the purpose of carrying out a program of rehabilitation for individuals whose earning capacity is impaired by age or physical or mental deficiency or injury or providing remunerative work for individuals who because of their impaired physical or mental capacity cannot be readily absorbed in the competitive labor market, by an individual receiving such rehabilitation or remunerative work;

E. As part of an unemployment work-relief or work-training program assisted or financed in whole or in part by any Federal agency or an agency of a State or political subdivision or municipal corporation thereof, by an individual receiving such work-relief or work-training; or

F. After December 31, 1977, by an inmate of a custodial or penal institution.

## II. REGULATIONS

## 26 C.F.R. § 1.511-2(a)(3)(ii) - Organizations Subject to Tax

(a) Organizations other than trusts and title holding companies. (1)(i) The taxes imposed by section 511(a)(1) apply in the case of any organization (other than a trust described in section 511(b)(2) or an organization described in section 501(c)(1)) which is exempt from taxation under section 501(a) (except as provided in sections 507 through 515). For special rules concerning corporations described in section 501(c)(2), see paragraph (c) of this section.

(ii) In the case of an organization described in section 501(c)(4), (7), (8), (9), (10), (11), (12), (13), (14)(A), (15), (16), or (18), the taxes imposed by section 511(a)(1) apply only for taxable years beginning after December 31, 1969. In the case of an organization described in section 501(c)(14) (B) or (C), the taxes imposed by section 511(a)(1) apply only for taxable years beginning after February 2, 1966.

(2) The taxes imposed by section 511(a) apply in the case of any college or university which is an agency or instrumentality of any government or any political subdivision thereof, or which is owned or operated by a government or any political subdivision thereof or by any agency or instrumentality of any one or more governments or political subdivisions. Such taxes also apply in the case of any corporation wholly owned by one or more such colleges or universities. As here used, the word government includes any foreign government (to the extent not contrary to any treaty obligation of the United States) and all domestic governments (the United States and any of its Territories or possessions, any State, and the District of Columbia). Elementary and secondary schools operated by such governments are not subject to the tax on unrelated business income.

(3)

(i) For taxable years beginning before January 1, 1970, churches and associations or conventions of churches are exempt from the taxes imposed by section 511. The exemption is applicable only to an organization which itself is a church or an association or convention of churches. Subject to the provisions of subdivision (ii) of this subparagraph, religious organizations, including religious orders, if not themselves churches or associations or conventions of churches, and all other organizations which are organized or operated under church auspices, are subject to the tax imposed by section 511, whether or not they engage in religious, educational, or charitable activities approved by a church.

(ii) The term church includes a religious order or a religious organization if such order or organization (a) is an integral part of a church, and (b) is engaged in carrying out the functions of a church, whether as a civil law corporation or otherwise. In determining whether a religious order or organization is an integral part of a church, consideration will be given to the degree to which it is connected with, and controlled by, such church. A religious order or organization shall be considered to be engaged in carrying out the functions of a church if its duties include the ministration of sacerdotal functions and the conduct of religious worship. If a religious order or organization is not an integral part of a church, or if such an order or organization is not authorized to carry out the functions of a church (ministration of sacerdotal functions and conduct of religious worship) then it is subject to the tax imposed by section 511 whether or not it engages in religious, educational, or charitable activities approved by a church. What constitutes the conduct of religious worship or the ministration of sacerdotal functions depends on the tenets and practices of a particular religious body constituting a church. If a religious

17

order or organization can fully meet the requirements stated in this subdivision, exemption from the tax imposed by section 511 will apply to all its activities, including those which it conducts through a separate corporation (other than a corporation described in section 501(c)(2)) or other separate entity which it wholly owns and which is not operated for the primary purpose of carrying on a trade or business for profit. Such exemption from tax will also apply to activities conducted through a separate corporation (other than a corporation described in section 501(c)(2)) or other separate entity which is wholly owned by more than one religious order or organization, if all such orders or organizations fully meet the requirements stated in this subdivision and if such corporation or other entity is not operated for the primary purpose of carrying on a trade or business for profit.

(iii) For taxable years beginning after December 31, 1969, churches and conventions or associations of churches are subject to the taxes imposed by section 511, unless otherwise entitled to the benefit of the transitional rules of section 512(b)(14) and § 1.512(b)-1(i).

## 26 C.F.R § 1.509(a)-4(a)(1), (i)(4) - Supporting Organizations

(a) In general.

(1) Section 509(a)(3) excludes from the definition of private foundation those organizations which meet the requirements of subparagraphs (A), (B), and (C) thereof.

(2) Section 509(a)(3)(A) provides that a section 509(a)(3) organization must be organized, and at all times thereafter operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organizations described in section 509(a) (1) or (2). Section 509(a)(3)(A) describes the nature of the support or benefit which a section 509(a)(3) organization must provide to one or more section 509(a) (1) or (2) organizations. For purposes of section 509(a)(3)(A), paragraph (b) of this section generally describes the organizational and operational tests; paragraph (c) of this section describes permissible purposes under the organizational test; paragraph (d) of this section describes the requirement of supporting or benefiting one or more specified publicly supported organizations; and paragraph (e) of this section describes permissible beneficiaries and activities under the operational test.

(3) Section 509(a)(3)(B) provides that a section 509(a)(3) organization must be operated, supervised, or controlled by or in connection with one or more organizations described in section 509(a) (1) or (2). Section 509(a)(3)(B) and paragraph (f) of this section describe the nature of the relationship which must exist between the section 509(a)(3) and section 509(a) (1) or (2) organizations. For purposes of section 509(a)(3)(B), paragraph (g) of this section defines operated, supervised, or controlled by; paragraph (h) of this section defines supervised or controlled in connection with; and paragraph (i) of this section defines operated in connection with.

(4) Section 509(a)(3)(C) provides that a section 509(a)(3) organization must not be controlled directly or indirectly by disqualified persons (other than foundation managers or organizations described in section 509(a) (1) or (2)). Section 509(a)(3)(C) and paragraph (j) of this section prescribe a limitation on the control over the section 509(a)(3) organization.

(5) For purposes of this section, the term supporting organization means either an organization described in section 509(a)(3) or an organization seeking section 509(a)(3) status, depending upon its context. For purposes of this section, the term publicly supported organization means an

organization described in section 509(a) (1) or (2).

(6) For purposes of paragraph (i) of this section, the term " supported organization" means a specified publicly supported organization described in paragraphs (d)(2)(iv) or (d)(4) of this section.

\*    \*    \*

(i) Meaning of operated in connection with -

(1) General rule. For each taxable year, a supporting organization is operated in connection with one or more supported organizations (that is, is a "Type III supporting organization") only if it is not disqualified by reason of paragraph (f)(5) (relating to acceptance of contributions from controlling donors) or paragraph (i)(10) (relating to foreign supported organizations) of this section, and it satisfies -

(i) The notification requirement, which is set forth in paragraph (i)(2) of this section;

(ii) The responsiveness test, which is set forth in paragraph (i)(3) of this section; and

(iii) The integral part test, which is satisfied by maintaining significant involvement in the operations of one or more supported organizations and providing support on which the supported organization(s) are dependent; in order to satisfy this test, the supporting organization must meet the requirements either for -

(A) Functionally integrated Type III supporting organizations set forth in paragraph (i)(4) of this section; or

(B) Non-functionally integrated Type III supporting organizations set forth in paragraph (i)(5) of this section.

\*    \*    \*

(4) Integral part test - functionally integrated Type III supporting organization -

(i) General rule. A supporting organization meets the integral part test and will be considered functionally integrated within the meaning of section 4943(f)(5)(B), if it -

(A) Engages in activities substantially all of which directly further the exempt purposes of one or more supported organizations and otherwise meets the requirements described in paragraph (i)(4)(ii) of this section;

(B) Is the parent of each of its supported organizations, as described in paragraph (i)(4)(iii) of this section; or

(C) Supports a governmental supported organization and otherwise meets the requirements of paragraph (i)(4)(iv) of this section.

(ii) Substantially all activities directly further exempt purposes -

(A) In general. A supporting organization meets the requirements of this paragraph (i)(4)(ii) if

19

it engages in activities substantially all of which -

(1) Directly further the exempt purposes of one or more supported organizations to which the supporting organization is responsive by performing the functions of, or carrying out the purposes of, such supported organization(s); and

(2) But for the involvement of the supporting organization, would normally be engaged in by such supported organization(s).

(B) Meaning of substantially all. For purposes of paragraph (i)(4)(ii)(A) of this section, in determining whether substantially all of a supporting organization's activities directly further the exempt purposes of one or more supported organization(s) to which the supporting organization is responsive, all pertinent facts and circumstances will be taken into consideration.

(C) Meaning of directly further. Activities "directly further" the exempt purposes of one or more supported organizations for purposes of this paragraph (i)(4) only if they are conducted by the supporting organization itself, rather than by a supported organization. Holding title to and managing exempt-use assets described in paragraph (i)(8)(ii) of this section are activities that directly further the exempt purposes of the supported organization within the meaning of this paragraph (i)(4). Conversely, except as provided in paragraph (i)(4)(ii)(D) of this section, fundraising, making grants (whether to the supported organization or to third parties), and investing and managing non-exempt-use assets are not activities that directly further the exempt purposes of the supported organization within the meaning of this paragraph (i)(4).

(D) Payments to individual beneficiaries. The making or awarding of grants, scholarships, or other payments to individual beneficiaries who are members of the charitable class benefited by a supported organization will be treated as an activity that directly furthers the exempt purposes of that supported organization for purposes of this paragraph (i)(4) only if -

(1) The individual beneficiaries are selected on an objective and nondiscriminatory basis (as described in § 53.4945-4(b));

(2) The officers, directors, or trustees of the supported organization have a significant voice in the timing of the payments, the manner of making them, and the selection of recipients; and

(3) The making or awarding of such payments is part of an active program of the supporting organization that directly furthers the exempt purposes of the supported organization and in which the supporting organization maintains significant involvement, as defined in § 53.4942(b)-1(b)(2)(ii) (except that "supporting organization" shall be substituted for "foundation").

(iii) Parent of supported organization(s). For purposes of paragraph (i)(4)(i)(B) of this section, a supporting organization is the parent of a supported organization if the supporting organization exercises a substantial degree of direction over the policies, programs, and activities of the supported organization and a majority of the officers, directors, or trustees of the supported organization is appointed or elected, directly or indirectly, by the governing body, members of the governing body, or officers (acting in their official capacity) of the supporting organization.

\*   \*   \*

## 26 C.F.R. § 301.7701-1(a)(4) - Classification of Organizations for Federal Tax Purposes

(a) Organizations for federal tax purposes -

(1) In general. The Internal Revenue Code prescribes the classification of various organizations for federal tax purposes. Whether an organization is an entity separate from its owners for federal tax purposes is a matter of federal tax law and does not depend on whether the organization is recognized as an entity under local law.

\*   \*   \*

(4) Single owner organizations. Under §§ 301.7701-2 and 301.7701-3, certain organizations that have a single owner can choose to be recognized or disregarded as entities separate from their owners.

## 26 C.F.R. § 301.7701-2(a) - Business Entities; Definitions

(a) Business entities. For purposes of this section and § 301.7701-3, a business entity is any entity recognized for federal tax purposes (including an entity with a single owner that may be disregarded as an entity separate from its owner under § 301.7701-3) that is not properly classified as a trust under § 301.7701-4 or otherwise subject to special treatment under the Internal Revenue Code. A business entity with two or more members is classified for federal tax purposes as either a corporation or a partnership. A business entity with only one owner is classified as a corporation or is disregarded; if the entity is disregarded, its activities are treated in the same manner as a sole proprietorship, branch, or division of the owner. But see paragraphs (c)(2)(iii) through (vi) of this section for special rules that apply to an eligible entity that is otherwise disregarded as an entity separate from its owner.

## § 301.7701-3(b)(1)(ii) - Classification of Certain Business Entities

(a) In general. A business entity that is not classified as a corporation under § 301.7701-2(b) (1), (3), (4), (5), (6), (7), or (8) (an eligible entity) can elect its classification for federal tax purposes as provided in this section. An eligible entity with at least two members can elect to be classified as either an association (and thus a corporation under § 301.7701-2(b)(2)) or a partnership, and an eligible entity with a single owner can elect to be classified as an association or to be disregarded as an entity separate from its owner. Paragraph (b) of this section provides a default classification for an eligible entity that does not make an election. Thus, elections are necessary only when an eligible entity chooses to be classified initially as other than the default classification or when an eligible entity chooses to change its classification. An entity whose classification is determined under the default classification retains that classification (regardless of any changes in the members' liability that occurs at any time during the time that the entity's classification is relevant as defined in paragraph (d) of this section) until the entity makes an election to change that classification under paragraph (c)(1) of this section. Paragraph (c) of this section provides rules for making express elections, including a rule under which a domestic eligible entity that elects to be classified as an association consents to be subject to the dual consolidated loss rules of section 1503(d). Paragraph (d) of this section provides special rules for foreign eligible entities. Paragraph (e) of this section provides special rules for classifying entities resulting from partnership terminations and divisions under section 708(b). Paragraph (f) of this section sets forth the effective date of this section and a special rule relating to

prior periods.

(b) Classification of eligible entities that do not file an election -

    (1) Domestic eligible entities. Except as provided in paragraph (b)(3) of this section, unless the entity elects otherwise, a domestic eligible entity is -
        (i) A partnership if it has two or more members; or
        (ii) Disregarded as an entity separate from its owner if it has a single owner.
    (2) Foreign eligible entities -
        (i) In general. Except as provided in paragraph (b)(3) of this section, unless the entity elects otherwise, a foreign eligible entity is -
            (A) A partnership if it has two or more members and at least one member does not have limited liability;
            (B) An association if all members have limited liability; or
            (C) Disregarded as an entity separate from its owner if it has a single owner that does not have limited liability.

        (ii) Definition of limited liability. For purposes of paragraph (b)(2)(i) of this section, a member of a foreign eligible entity has limited liability if the member has no personal liability for the debts of or claims against the entity by reason of being a member. This determination is based solely on the statute or law pursuant to which the entity is organized, except that if the underlying statute or law allows the entity to specify in its organizational documents whether the members will have limited liability, the organizational documents may also be relevant. For purposes of this section, a member has personal liability if the creditors of the entity may seek satisfaction of all or any portion of the debts or claims against the entity from the member as such. A member has personal liability for purposes of this paragraph even if the member makes an agreement under which another person (whether or not a member of the entity) assumes such liability or agrees to indemnify that member for any such liability.
    (3) Existing eligible entities -
        (i) In general. Unless the entity elects otherwise, an eligible entity in existence prior to the effective date of this section will have the same classification that the entity claimed under §§ 301.7701-1 through 301.7701-3 as in effect on the date prior to the effective date of this section; except that if an eligible entity with a single owner claimed to be a partnership under those regulations, the entity will be disregarded as an entity separate from its owner under this paragraph (b)(3)(i). For special rules regarding the classification of such entities prior to the effective date of this section, see paragraph (h)(2) of this section.
        (ii) Special rules. For purposes of paragraph (b)(3)(i) of this section, a foreign eligible entity is treated as being in existence prior to the effective date of this section only if the entity's classification was relevant (as defined in paragraph (d) of this section) at any time during the sixty months prior to the effective date of this section. If an entity claimed different classifications prior to the effective date of this section, the entity's classification for purposes of paragraph (b)(3)(i) of this section is the last classification claimed by the entity. If a foreign eligible entity's classification is relevant prior to the effective date of this section, but no federal tax or information return is filed or the federal tax or information return does not indicate the classification of the entity, the entity's classification for the period prior to the effective date of this section is determined under the regulations in effect on the date prior to the effective date of this section.

**26 C.F.R. § 601.601 (d)(2) - Rules and Regulations**

\*   \*   \*

(d) Publication of rules and regulations -

(1) General. All Internal Revenue Regulations and Treasury decisions are published in the Federal Register and in the Code of Federal Regulations. See paragraph (a) of § 601.702. The Treasury decisions are also published in the weekly Internal Revenue Bulletin and the semiannual Cumulative Bulletin. The Internal Revenue Bulletin is the authoritative instrument of the Commissioner for the announcement of official rulings, decisions, opinions, and procedures, and for the publication of Treasury decisions, Executive orders, tax conventions, legislation, court decisions, and other items pertaining to internal revenue matters. It is the policy of the Internal Revenue Service to publish in the Bulletin all substantive and procedural rulings of importance or general interest, the publication of which is considered necessary to promote a uniform application of the laws administered by the Service. Procedures set forth in Revenue Procedures published in the Bulletin which are of general applicability and which have continuing force and effect are incorporated as amendments to the Statement of Procedural Rules. It is also the policy to publish in the Bulletin all rulings which revoke, modify, amend, or affect any published ruling. Rules relating solely to matters of internal practices and procedures are not published; however, statements of internal practices and procedures affecting rights or duties of taxpayers, or industry regulation, which appear in internal management documents, are published in the Bulletin. No unpublished ruling or decision will be relied on, used, or cited by any officer or employee of the Internal Revenue Service as a precedent in the disposition of other cases.

(2) Objectives and standards for publication of Revenue Rulings and Revenue Procedures in the Internal Revenue Bulletin - (i)(a) A Revenue Ruling is an official interpretation by the Service that has been published in the Internal Revenue Bulletin. Revenue Rulings are issued only by the National Office and are published for the information and guidance of taxpayers, Internal Revenue Service officials, and others concerned.

(b) A Revenue Procedure is a statement of procedure that affects the rights or duties of taxpayers or other members of the public under the Code and related statutes or information that, although not necessarily affecting the rights and duties of the public, should be a matter of public knowledge.

(ii)(a) The Internal Revenue Bulletin is the authoritative instrument of the Commissioner of Internal Revenue for the publication of official rulings and procedures of the Internal Revenue Service, including all rulings and statements of procedure which supersede, revoke, modify, amend, or affect any previously published ruling or procedure. The Service also announces in the Bulletin the Commissioner's acquiescences and nonacquiescences in decisions of the U.S. Tax Court (other than decisions in memorandum opinions), and publishes Treasury decisions, Executive orders, tax conventions, legislation, court decisions, and other items considered to be of general interest. The Assistant Commissioner (Technical) administers the Bulletin program.

(b) The Bulletin is published weekly. In order to provide a permanent reference source, the contents of the Bulletin are consolidated semiannually into an indexed Cumulative Bulletin. The Bulletin Index-Digest System provides a research and reference guide to matters appearing in the Cumulative Bulletins. These materials are sold by the Superintendent of Documents, U.S. Government Printing Office, Washington, DC 20402.

(iii) The purpose of publishing revenue rulings and revenue procedures in the Internal Revenue Bulletin is to promote correct and uniform application of the tax laws by Internal Revenue Service employees and to assist taxpayers in attaining maximum voluntary compliance by informing Service personnel and the public of National Office interpretations of the internal revenue laws, related statutes, treaties, regulations, and statements of Service procedures affecting the rights and duties of taxpayers. Therefore, issues and answers involving substantive tax law under the jurisdiction of the Internal Revenue Service will be published in the Internal Revenue Bulletin, except those involving:

(a) Issues answered by statute, treaty, or regulations;

(b) Issues answered by rulings, opinions, or court decisions previously published in the Bulletin;

(c) Issues that are of insufficient importance or interest to warrant publication;

(d) Determinations of fact rather than interpretations of law;

(e) Informers and informers' rewards; or

(f) Disclosure of secret formulas, processes, business practices, and similar information.

Procedures affecting taxpayers' rights or duties that relate to matters under the jurisdiction of the Service will be published in the Bulletin.

## III.   OTHER IRS AUTHORITIES

### Rev. Proc. 2019-05, IRB 2019-1, 232

| | |
|---|---|
| **SECTION 1. WHAT IS THE PURPOSE OF THIS REVENUE PROCEDURE?** | This revenue procedure sets forth procedures for issuing determination letters on issues under the jurisdiction of the Director, Exempt Organizations (EO) Rulings and Agreements. Specifically, it explains the procedures for issuing determination letters on exempt status (in response to applications for recognition of exemption from Federal income tax under § 501 or § 521 other than those subject to Rev. Proc. 2019–4, this Bulletin (relating to pension, profit-sharing, stock bonus, annuity, and employee stock ownership plans)), private foundation status, and other determinations related to exempt organizations. These procedures also apply to revocation or modification of determination letters. This revenue procedure also provides guidance on the exhaustion of administrative remedies for purposes of declaratory judgment under § 7428. Finally, this revenue procedure provides guidance on applicable user fees for requesting determination letters. |
| **Description of terms used in this revenue procedure** | .01 For purposes of this revenue procedure– |
| | (1) The term "Service" means the Internal Revenue Service. |
| | (2) The term "EO Rulings and Agreements" means the office in EO that is primarily |

### Rev. Proc. 2019-05, IRB 2019-1, 235

| | |
|---|---|
| **SECTION 3. UNDER WHAT CIRCUMSTANCES DOES EO DETERMINATIONS ISSUE DETERMINATION LETTERS?** | |
| **Matters on which EO Determinations will issue a determination letter** | .01 EO Determinations issues determination letters on the following matters: |
| | (1) Initial qualification for exempt status of organizations described in § 501 or § 521 (including reinstatement of organizations that have been automatically revoked pursuant to § 6033(j) and subordinate organizations included in a group exemption letter that have been revoked pursuant to that provision); |
| | (2) Updated exempt status letter (affirmation letter) to reflect changes to an organization's name or address, or to replace a lost exempt status letter; |
| | (3) Classification or reclassification of private foundation status, including whether an organization is– |
| | (a) A private foundation; |
| | (b) A public charity described in §§ 509(a)(1) and 170(b)(1)(A) (other than clauses (v), (vii), and (viii)); |
| | (c) A public charity described in § 509(a)(2) or (4); |
| | (d) A public charity described in § 509(a)(3), whether such organization is described in § 509(a)(3)(B)(i), (ii), or (iii) ("supporting organization type"), and whether or not a Type III supporting organization is functionally integrated; |
| | (e) A private operating foundation described in § 4942(j)(3); or |
| | (f) An exempt operating foundation described in § 4940(d)(2). |
| | (4) Recognition of unusual grants to certain organizations under §§ 170(b)(1)(A)(vi) and 509(a)(2); |

**Rev. Proc. 2019-05, IRB 2019-1, 239**

**SECTION 4. WHAT ARE THE GENERAL INSTRUCTIONS FOR REQUESTING DETERMINATION LETTERS?**

| | |
|---|---|
| **In general** | .01 This section explains the general instructions for requesting determination letters. However, certain procedures do not apply to requests submitted on Form 1023–EZ, *Streamlined Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code*, as indicated in this revenue procedure or in the form and its instructions. In addition to these general instructions, specific procedures apply to requests submitted by letter (as described in section 5), applications for recognition of exemption from Federal income tax under § 501 or § 521 (as described in section 6), and to requests for determinations submitted on Form 8940, *Request for Miscellaneous Determination* (as described in section 7). |
| **Format of request** | .02 **Which form, if any, should be used for the request?** Some requests are made by letter and some requests are made by submitting a specific form. |

\*     \*     \*

| | |
|---|---|
| **Letter request** | (7) **Letter request.** |
| | (a) **Letter applications.** (i) An organization seeking recognition of exemption under |

| | | |
|---|---|---|
| Bulletin No. 2019–1 | 239 | January 2, 2019 |

§ 501(c)(11), (14), (16), (18), (21), (22), (23), (26), (27), (28), or (29), or under § 501(d), must submit a letter application along with Form 8718.

(ii) A central organization that has previously received or is concurrently requesting recognition of its own exemption can request a group exemption letter by submitting a letter application along with Form 8718.

(b) **Other letter requests.** Any determination letter request which is not required to be submitted on a form may be submitted by letter.

**Rev. Proc. 2019-05, IRB 2019-1, 240-41**

| | |
|---|---|
| **Signature on request** | .04 **Signature on request.** The request for determination letter must be signed and dated by the taxpayer or, when applicable, the taxpayer's representative. Neither a stamped signature nor a faxed signature is permitted. |
| | (1) **Individual authorized to sign Form 1023, 1023–EZ, or 8940 on behalf of an organization.** In the case of a request for a determination letter made by filing Form 1023, Form 1023–EZ, or Form 8940, an officer, director, trustee, or other official who is authorized to sign for the organization must sign the applicable form. The signature of a representative authorized by a power of attorney who is not an officer, director, trustee, or other official of the organization will not satisfy the signature requirement for Form 1023, Form 1023–EZ, or Form 8940. *See* the instructions to the applicable form for more information on who may sign the application on behalf of an organization. |
| | (2) **Individual or representative authorized to sign Form 1024.** In the case of a request for a determination letter made by filing Form 1024, an officer, a trustee who is authorized to sign, or a representative authorized by a power of attorney (*see* section 4.05 of this revenue procedure), must sign the application. |
| | (3) **Individual or representative authorized to sign Form 1024–A.** In the case of a request for a determination letter made by filing Form 1024–A, an officer, a director, a trustee who is authorized to sign, or a representative authorized by a power of attorney (*see* section 4.05 of this revenue procedure), must sign the application. |

(4) **Authorized representatives for all other requests.** Except as provided in section 4.04(1), and (2), and (3) to sign the request, or to appear before the Service in connection with the request, the representative must be listed in Appendix B.

**Power of attorney and declaration of representative**

.05 **Power of attorney and declaration of representative.** Any representative authorized by a power of attorney, whether or not enrolled to practice, must comply with the conference and practice requirements of the Statement of Procedural Rules (26 C.F.R. § 601.501–601.509) and Treasury Department Circular No. 230, which provide the rules for representing a taxpayer before the Service.

Form 2848, *Power of Attorney and Declaration of Representative*, must be used to provide the representative's authorization (Part I of Form 2848, Power of Attorney) and the representative's qualification (Part II of Form 2848, Declaration of Representative).

The name of the individual signing Part I of Form 2848 should also be typed or printed on this form. A stamped signature is not permitted.

An original, a copy, or a facsimile transmission (fax) of the power of attorney is acceptable so long as its authenticity is not reasonably disputed.

**Penalty of perjury statement**

.06

(1) **Penalty of perjury statement requirements for requests for determination letters made on Form 1023, 1023–EZ, 1024, 1024–A, or 8940.** The signature of an individual described in section 4.04(1), (2), or (3) of this revenue procedure meets the penalty of perjury statement signature requirements for requests on Form 1023, 1023–EZ, 1024, 1024–A, or 8940, as applicable.

(2) **Penalty of perjury statement requirements for letter requests and responses to requests for additional information.** Any letter request or information submitted at a later time (regardless of the format of the original request), must be accompanied by the following declaration–

"Under penalties of perjury, I declare that I have examined this request, or this modification to the request, including accompanying documents, and, to the best of my knowledge and belief, the request or the modification contains all the relevant facts relating to the request, and such facts are true, correct, and complete."

This declaration must be signed and dated by the taxpayer, not the taxpayer's representative authorized by a power of attorney. The signature of an individual described in section 4.04(1) is the signature of the taxpayer for purposes of the penalty of perjury statement. The signature of an authorized representative described in section 4.04(2), (3), or (4) will not meet the penalty of perjury statement requirements (except as otherwise provided in Appendix B). *See* the instructions to the relevant form for additional detail. Neither a stamped signature nor a faxed signature is permitted.

The individual who signs for a corporate taxpayer must be an officer of the corporate taxpayer who has personal knowledge of the facts, and whose duties are not limited to obtaining a determination letter from the Service.

The individual signing for a trust, a state law partnership, or a limited liability company must be, respectively, a trustee, general partner, or member-manager who has personal knowledge of the facts.

**Applicable user fee**

.07 Section 7528 requires taxpayers to pay user fees for requests for determination letters. *See* section 14 and Appendix A of this revenue procedure for more information.

**Where will copies of the determination letter be sent?**

.08 The original of the determination letter will be sent to the taxpayer and a copy of the determination letter will be sent to up to two representatives listed on Form 2848 as appointed to receive notices and communications.

**Expedited processing**

.09 Requests for determination letters are normally processed in the order of receipt by the Service. However, expedited processing of a request for a determination letter may be approved where a request for expedited processing is made in writing and contains a compelling reason for

**Rev. Proc. 2019-05, IRB 2019-1, 243-244**

**SECTION 5. WHAT ARE THE SPECIFIC PROCEDURES FOR REQUESTING A DETERMINATION LETTER BY LETTER?**

**In general**

.01 This section explains the specific procedures for requesting a determination letter by letter. Any determination letter request which is not required to be submitted on a form may be submitted by letter. For example, an organization seeking to be described in § 501(d) would submit a letter application in accordance with this section 5, other applicable sections of this revenue procedure, and Rev. Proc. 72–5, 1972–1 C.B. 709.

Other specific procedures may apply, depending on the type of request. *See* section 6 of this revenue procedure for applications for recognition of exempt status under § 501 or § 521.

**Certain information required**

.02

**Statement of facts**

(1) **Complete statement of facts and other information.** Each request for a determination letter must contain a complete statement of all facts relating to the request. These facts include the organization's name, address, telephone number, and Employer Identification Number (EIN).

**Documents**

(2) **Copies of all organizing documents, bylaws, contracts, wills, deeds, agreements, instruments, and other documents.** All documents that are pertinent to the request (including organizing documents, bylaws, contracts, wills, deeds, agreements, instruments, trust documents, and proposed disclaimers) must be submitted with the request.

Original documents should not be submitted because they become part of the Service's file and will not be returned to the taxpayer. Instead, true copies of all such documents should be submitted with the request. Each document, other than the request, should be labeled alphabetically and attached to the request in alphabetical order.

**Analysis of material facts**

(3) **Analysis of material facts.** All material facts in documents must be included, rather than merely incorporated by reference, in the taxpayer's initial request or in supplemental letters. These facts must be accompanied by an analysis of their bearing on the request, specifying the provisions that apply.

**Bulletin No. 2019–1**

243

**January 2, 2019**

**Same or similar issue previously submitted or currently pending**

(4) **Statement regarding whether same or similar issue was previously ruled on or requested, or is currently pending.** The request must also state whether, to the best of the knowledge of both the taxpayer and the taxpayer's representatives–

(a) the Service or the Office of Associate Chief Counsel previously ruled on the same or similar issue for the taxpayer (or a related taxpayer within the meaning of § 267, or a member of an affiliated group of which the taxpayer is also a member within the meaning of § 1504) or a predecessor;

(b) the taxpayer, a related taxpayer, a predecessor, or any representatives previously submitted the same or similar issue to the Service or the Office of Associate Chief Counsel but withdrew the request before a letter ruling or determination letter was issued;

(c) the taxpayer, a related taxpayer, or a predecessor previously submitted a request involving the same or a similar issue that is currently pending with the Service or the Office of Associate Chief Counsel; or

(d) at the same time as this request, the taxpayer or a related taxpayer is presently submitting another request involving the same or a similar issue to the Service or the Office of Associate Chief Counsel.

If the statement is affirmative for (a), (b), (c), or (d) of section 5.02(4), the statement must give the date the request was submitted, the date the request was withdrawn or ruled on, if applicable, and other details of the Service's or Office of Associate Chief Counsel's consideration of the issue.

**Statement of authorities**

(5) The request must include a statement of whether the law in connection with the request is uncertain and whether the issue is adequately addressed by relevant authorities.

(a) **Statement of supporting authorities.** If the taxpayer advocates a particular conclusion, an explanation of the grounds for that conclusion and the relevant authorities to support it must also be included. Even if not advocating a particular tax treatment of a proposed transaction, the taxpayer must still furnish views on the tax results of the proposed transaction and a statement of relevant authorities to support those views.

(b) **Statement of contrary authorities.** The taxpayer is also encouraged to inform the Service about, and discuss the implications of, any authority believed to be contrary to the position advanced, such as legislation (or pending legislation), tax treaties, court decisions, regulations, revenue rulings, revenue procedures, notices or announcements. If the taxpayer determines that there are no contrary authorities, a statement in the request to this effect would be helpful. If the taxpayer does not furnish either contrary authorities or a statement that none exists, the Service in complex cases or those presenting difficult or novel issues may request submission of contrary authorities or a statement that none exists. Failure to comply with this request may result in the Service's refusal to issue a determination letter.

Identifying and discussing contrary authorities will generally enable Service personnel to understand the issue and relevant authorities more quickly. When Service personnel receive the request, they will have before them the taxpayer's thinking on the effect and applicability of contrary authorities. This information should make research easier and lead to earlier action by the Service. If the taxpayer does not disclose and distinguish significant contrary authorities, the Service may need to request additional information, which will delay action on the request.

## Rev. Proc. 2019-05, IRB 2019-1, 253

| | |
|---|---|
| **Contents of proposed adverse determination letter for requests with appeals rights** | .03 If EO Determinations reaches the conclusion that the organization does not meet the requirements for a favorable determination letter and the letter is a type for which an opportunity for protest/appeal is available under section 9.02, the Service will issue a proposed adverse determination letter, which will: |
| | (1) include a detailed discussion of the basis for the Service's conclusion; and |
| | (2) inform the organization of its opportunity to protest/appeal the decision and request a conference with the Appeals Office. |
| | The non-acceptance under section 4.10 of a request for a determination letter is not a proposed adverse determination. |
| **Protest/appeal of a proposed adverse determination letter on certain issues** | .04 To protest/appeal a proposed adverse determination letter described in section 9.02, the organization must submit a statement of the facts, law and arguments in support of its position within 30 days from the date of the proposed adverse determination letter. The organization must also state whether it is requesting an Appeals Office conference. |
| **Final adverse determination letter where no protest/appeal is submitted** | .05 If an organization does not submit a timely protest/appeal of a proposed adverse determination letter on an issue described in section 9.02, a final adverse determination letter will be issued to the organization. The final adverse letter will provide information about the disclosure of the proposed and final adverse letters. *See* section 13.04 of this revenue procedure. |
| | The non-acceptance under section 4.10 of a request for a determination letter is not a final adverse determination. |
| **Review of protest by EO Determinations** | .06 If an organization submits a protest/appeal of a proposed adverse determination letter described in section 9.02, EO Determinations will review the protest, and, if it determines that the organization meets the requirements for approval of its request, issue a favorable determination letter. If EO Determinations maintains its adverse position after reviewing the protest, it will forward the case file to Appeals. If new information is raised in the protest, EO Determinations will follow the procedures described in section 9.08, which may require the issuance of a new proposed denial, prior to sending the case to Appeals. |
| **Consideration by the Appeals Office** | .07 The Appeals Office will consider the organization's protest/appeal submitted in response to a proposed adverse determination letter described in section 9.02. If the Appeals Office agrees with the proposed adverse determination, it will either issue a final adverse determination or, if a conference was requested, contact the organization to schedule a conference. At the end of the conference process, which may involve the submission of additional information, the Appeals Office will generally issue a final adverse determination letter or a favorable determination letter. |
| | If the Appeals Office believes that an exemption or private foundation status issue is not covered by published precedent or that there is non-uniformity, the Appeals Office must request technical advice from the Office of Associate Chief Counsel (Employee Benefits, Exempt Organizations, and Employment Taxes). *See* Rev. Proc. 2019–2, this Bulletin. |
| **Effect of new information raised in protest/appeal** | .08 If the organization submits new information as part of a protest, or during Appeals consideration, the matter may be returned to EO Determinations for further consideration. As a result of its review of the new information, EO Determinations may issue a favorable determination letter, rebuttal letter, or new proposed adverse determination letter. If a rebuttal letter is |

29

**IRS Priv. Ltr. Rul. 85-08-070 (1984)**

PLR 8508070 (IRS PLR), 1984 WL 269861
Internal Revenue Service (I.R.S.)
Private Letter Ruling
November 27, 1984
Section 4991 -- Categories of Oil
4991.00-00 Categories of Oil
4991.02-00 Exempt Oil
4991.02-02 Charitable Interest
CC:IND:S:1:1

Gentlemen:

This is in response to your letter of November 23, 1983, as supplemented by your letter of May 13, 1984, requesting a ruling on whether crude oil production attributable to certain royalty interests in oil producing properties is exempt from windfall profit tax under section 4991(b)(1) of the Internal Revenue Code.

X and Y are incorporated religious organizations and qualify for the exemption from federal income tax provided by section 501(c)(3) of the Code. Both X and Y own royalty interests in certain oil producing properties. The proceeds from these royalty interests are dedicated for the operation of Z, which is an educational organization described in section 170(b)(1)(A)(ii). These proceeds were so dedicated prior to January 21, 1980.

The types of organizations that qualify for exemption from the windfall profit tax are more limited in scope than those types that qualify for exemption from federal income tax. Under section 4991(b)(1) of the Code "exempt oil" includes any crude oil from a qualified charitable interest. Section 4994(b)(1) defines the term "qualified charitable interest" to mean an economic interest in crude oil if such interest is held by certain organizations. In the instant case, in order for the taxpayers to avail themselves of section 4994(b)(1), and thus the exemption under section 4991(b)(1), it is necessary to determine if they are organizations described in section 170(b)(1)(A)(i).

Section 170(b)(1)(A)(i) of the Code provides that the deduction provided by section 170(a) shall pertain to a church or a convention or association of churches.

Section 1.170A-9(a) of the Income Tax Regulations states that an organization is described in section 170(b)(1)(A)(i) it is a church or a convention or association of churches.

The Internal Revenue Service looks to section 1.511-2(a)(3)(ii) of the regulations to more specifically define the term "church." That section provides in part:

The term 'church' includes a religious order or a religious organization if such order or organization (a) is an integral part of a church, and (b) is engaged in carrying out the functions of a church, whether as a civil law corporation or otherwise. In determining whether a religious order or organization is an integral part of a church, consideration will be given to the degree to which it is connected with, and controlled by, such church. A religious order or organization shall be considered to be engaged in carrying out the functions of a church if its duties include the ministration of sacerdotal functions and the conduct of religious worship.... What constitutes the conduct of religious worship or the ministration of sacerdotal functions depends on the tenets and practices of a particular religious body constituting a church.

30

Every church is obviously a religious organization; however, every religious organization is not necessarily a church. See De La Salle Institute v. United States, 195 F.Supp. 891 (1961). To be considered a church, each subordinate, in addition to being an integral part of the parent organization, must be "engaged in carrying out the functions of a church, whether as a civil law corporation or otherwise." For example, a subordinate organization of a church that is separately incorporated and primarily operates a hospital or conducts investment activities would not itself be a church.

We do not know all the specific activities currently carried on by X. However, based on the information furnished, it is our conclusion that X does not qualify as an organization described in section 170(b)(1)(A)(i) of the Code. Although it is an incorporated religious organization, it is not primarily engaged in carrying on exclusively religious activities such as the ministration of sacerdotal functions or the conduct of religious worship. It appears to have few activities other than to hold title to the royalty interests. (No determination has been made with respect to Y's status as an organization described in section 170(b)(1)(A)(i), and this ruling will only pertain to those royalty interests held by X).

Section 4986 of the Code imposes an excise tax on the windfall profit from taxable crude oil removed from the premises during the taxable period. The tax imposed by this section is to be paid by the producer of the crude oil. The term "producer" is defined in section 4996(a)(1)(A) to mean the holder of the economic interest in the crude oil.

As defined in section 4991 of the Code, taxable crude oil means all domestic crude oil which is not exempt oil. The term "exempt oil" includes crude oil from a qualified charitable interest, which in turn is defined in section 4994(b) to mean an economic interest in crude oil if such interest was held on January 21, 1980, by certain specified organizations. These organizations include an educational organization described in section 170(b)(1)(A)(ii), and a church or association of churches described in section 170(b)(1)(A)(i), both of which are also described in section 170(c)(2). In the case of a church, however, the interest must be held either for the benefit of an organization described in clause (ii), (iii), or (iv) of section 170(b)(1)(A) which is also described in section 170(c)(2), or for an organization described in section 170(c)(2) that is organized and operated primarily for the residential placement, care, or treatment of delinquent, dependent, orphaned, neglected, or handicapped children.

In the instant case, Z benefits from the income attributable to the royalty interests. However, it is X, a separate and distinct corporate entity, which possesses the economic interest in the crude oil. X is neither an educational organization nor a church, nor does it otherwise qualify as a producer of exempt oil. The charitable character of Z will not be imputed to its supporting corporation, X. Thus, while Z possesses the charitable attributes necessary to qualify for the exemption provided by section 4991(b)(1) of the Code, X is the producer of the crude oil.

Consequently, the economic interests in crude oil held by X are not qualified charitable interests, and the crude oil production attributable to such interests is not exempt oil.

This ruling is directed only to the taxpayer who requested it. Section 6110(j)(3) of the Internal Revenue Code provides that it may not be used or cited as precedent. Temporary or final regulations pertaining to one or more of the issues addressed in this ruling have not yet been adopted. Therefore, this ruling will be modified or revoked by adoption of temporary or final regulations, to the extent the regulations are inconsistent with any conclusions in the ruling. See section 17.04 of Rev. Proc. 84-1, 1984-1 I.R.B. 10, 20. However, when the criteria in section 17.05 of Rev. Proc. 84-1 are satisfied, a ruling is not revoked or modified retroactively except in rare or unusual circumstances.
 Sincerely yours,

31

Mario E. Lombardo
Director
Individual Tax Division
Section 6110(j)(3) of the Internal Revenue Code. This document may not be used or cited as precedent.

**IRS Priv. Ltr Rul. 86-24-126 (1986)**

Private Letter Ruling 8508070, 11/27/1984, IRC Sec(s). 4991
UIL No. 4991.02-02
Headnote:

Reference(s):Code Sec. 4991;
Private Letter Ruling 8508070
Code Sec. 4991 WINDFALL PROFIT TAX -- taxable crude oil -- qualified charitable interests .
Incorporated exempt religious orgs. X and Y own royalty interests in certain oil-producing properties.
Prior to 1-21-80, proceeds were dedicated to operation of educational org. Z. RULED: Economic
interests in crude oil held by X aren't qualified charitable interests, and crude oil production
attributable to such interests isn't exempt oil.
Copyright 1984, Tax Analysts.
Full Text:
Nov. 27, 1984
This is in response to your letter of November 23, 1983, as supplemented by your letter of May 13,
1984, requesting a ruling on whether crude oil production attributable to certain royalty interests in oil
producing properties is exempt from windfall profit tax under section 4991(b)(1) of the Internal
Revenue Code.
X and Y are incorporated religious organizations and qualify for the exemption from federal income
tax provided by  section 501(c)(3) of the Code. Both X and Y own royalty interests in certain oil
producing properties. The proceeds from these royalty interests are dedicated for the operation of Z,
which is an educational organization described in section 170(b)(1)(A)(ii) These proceeds were so
dedicated prior to January 21, 1980.
The types of organizations that qualify for exemption from the windfall profit tax are more limited in
scope than those types that qualify for exemption from federal income tax. Under  section 4991(b)(1)
of the Code "exempt oil" includes any crude oil from a qualified charitable interest. Section 4994(b)(1)
defines the term "qualified charitable interest" to mean an economic interest in crude oil if such interest
is held by certain organizations. In the instant case, in order for the taxpayers to avail themselves of
section 4994(b)(1) and thus the exemption under section 4991(b)(1) it is necessary to determine if they
are organizations described in section 170(b)(1)(A)(i)
Section 170(b)(1)(A)(i) of the Code provides that the deduction provided by section 170(a) shall
pertain to a church or a convention or association of churches.
Section 1.170A-9(a) of the Income Tax Regulations states that an organization is described in section
170(b)(1)(A)(i) it is a church or a convention or association of churches.
The Internal Revenue Service looks to section 1.511-2(a)(3)(f) of the regulations to more specifically
define the term "church." That section provides in part:
The term 'church' includes a religious order or a religious organization if such order or organization (a)
is an integral part of a church, and (b) is engaged in carrying out the functions of a church, whether as
a civil law corporation or otherwise. In determining whether a religious order or organization is an
integral part of a church, consideration will be given to the degree to which it is connected with, and
controlled by, such church. A religious order or organizaton shall be considered to be engaged in
carrying out the functions of a church if its duties include the ministration of sacerdotal functions and
the conduct of religious worship. . . . What constitutes the conduct of religious worship or the

ministration of sacerdotal functions depends on the tenets and practices of a particular religious body constituting a church.

Every church is obviously a religious organization; however, every religious organization is not necessarily a church. SEE DE LA SALLE INSTITUTE V. UNITED STATES, 195 F. Supp 891 (1961). To be considered a church, each subordinate, in addition to being an integral part of the parent organization, must be "engaged in carrying out the functions of a church, whether as a civil law corporation or otherwise." For example, a subordinate organization of a church that is separately incorporated and primarily operates a hospital or conducts investment activities would not itself be a church.

We do not know all the specific activities currently carried on by X. However, based on the information furnished, it is our conclusion that X does not qualify as an organization described in section 170(b)(1)(A)(i) of the Code. Although it is an incorporated religious organization, it is not primarily engaged in carrying on exlcusively religious activities such as the ministration of sacerdotal functions or the conduct of religious worship. It appears to have few activities other than to hold title to the royalty interests. (No determination has been made with respect to Y's status as an organization described in section 170(b)(1)(A)(i) and this ruling will only pertain to those royalty interests held by X.)

Section 4986 of the Code imposes an excise tax on the windfall profit from taxable crude oil removed from the premises during the taxable period. The tax imposed by this section is to be paid by the producer of the crude oil. The term "producer" is defined in section 4996(a)(1)(A) to mean the holder of the economic interest in the crude oil.

As defined in  section 4991 of the Code, taxable crude oil means all domestic crude oil which is not exempt oil. The term "exempt oil" includes crude oil from a qualified charitable interest, which in turn is defined in section 4994(b) to mean an economic interest in crude oil if such interest was held on January 21, 1980, by certain specified organizations. These organizations include an educational organization described in section 170(b)(1)(A)(ii) and a church or association of churches described in section 170(b)(1)(A)(i) both of which are also described in section 170(c)(2) In the case of a church, however, the interest must be held either for the benefit of an organization described in clause (ii), (iii), or (iv) of section 170(b)(1)(A) which is also described in section 170(c)(2) or for an organization described in section 170(c)(2) that is organized and operated primarily for the residential placement, care, or treatment of delinquent, dependent, orphaned, neglected, or handicapped children.

In the instant case, Z benefits from the income attributable to the royalty interests. However, it is X, a separate and distinct corporate entity, which possesses the economic interest in the crude oil. X is neither an educational organization nor a church, nor does it otherwise qualify as a producer of exempt oil. The charitable character of Z will not be imputed to its supporting corporation, X. Thus, while Z possesses the charitable attributes necessary to qualify for the exemption provided by  section 4991(b)(1) of the Code, X is the producer of the crude oil.

Consequently, the economic interests in crude oil held by X are not qualified charitable interests, and the crude oil production attributable to such interests is not exempt oil.

This ruling is directed only to the taxpayer who requested it. Section 6110(j)(3) of the Internal Revenue Code provides that it may not be used or cited as precedent. Temporary or final regulations pertaining to one or more of the issues addressed in this ruling have not been adopted. Therefore, this ruling will be modified or revoked by adoption of temporary or final regulations, to the extent the regulations are inconsistent with any conclusions in the ruling. See section 17.04 of Rev. Proc. 84-1, 1984-1 I.R.B. 10,20. However, when the criteria in section 17.05 of Rev. Proc. 84-1 are satisfied, a ruling is not revoked or modified retroactively except in rare or unusual circumstances.

**Rev. Rul. 74-224, 1974-1 C. B. 61**

Private foundation status; association of churches of different denominations. An exempt organization whose membership is comprised of churches of different denominations qualifies as an association of churches within the meaning of section 170(b)(1)(A)(i) of the Code for purposes of classification as an organization that is not a 'private foundation' within the meaning of section 509(a)(1).

Advice has been requested whether an organization which has a membership comprised of churches of various denominations qualifies as an 'association of churches' within the meaning of section 170(b)(1)(A)(i) of the Internal Revenue Code of 1954 for purposes of classification as an organization described in section 509(a)(1).

The organization is recognized as exempt under section 501(c)(3) of the Code and was created to act as the coordinating agency for its member churches for the purposes of developing the spirit of Christian fellowship and cooperative mission among the denominations and churches in a particular geographical area and to promote through cooperative effort the spiritual, moral, social, and civic welfare of the area. Membership is comprised of Catholic and Protestant Churches of various denominations. The Governing Board of the organization consists of two voting members from each Church.

The organization engages in a number of activities such as provision of clergymen at hospitals and college campuses, pastoral counseling, coordinated religious educational programs and facilities, and coordinated efforts to aid the poor. Support for the organization is primarily derived from its members and public contributions.

Section 509(a)(1) of the Code provides that the term 'private foundation' does not include an organization described in section 170(b)(1)(A) (other than in clauses (vii) and (viii)). An organization is described in section 170(b)(1)(A)(i) if it is a church or a convention or association of churches. Neither the Code nor the regulations thereunder define what constitutes a convention or association of churches.

Although the term 'convention or association of churches' has a historical meaning generally referring to a cooperative undertaking by churches of the same denomination, nothing in the legislative or religious history of the term prevents its application to a cooperative undertaking by churches of differing denominations, assuming such convention or association otherwise qualifies for recognition of exemption as an organization described in section 501(c)(3). The term is not limited in its application to a group of churches of the same denomination. Accordingly, the organization described herein is an association of churches within the meaning of section 170(b)(1)(A)(i) of the Code for purposes of classification as an organization described in section 509(a)(1).

**I.R.S. Tech.Adv.Mem. 2004-37-040 (June 7, 2004)**

INTERNAL REVENUE SERVICE

NATIONAL OFFICE TECHNICAL ADVICE MEMORANDUM

June 7, 2004

Number: 200437040 Release Date: 9/10/04 T:EO:B3
UIL: 501.00-00

District Director M Area
Attn: Chief, EP/EO Division

Taxpayer's Name:
Taxpayer's Address:
Taxpayer's Identification Number:
Years Involved:
Date of Conference:                        November 26, 2003

* * *

Issue 5—Church Classification

It is useful to consider X's qualification for church classification in light of the various criteria employed by the Service and the courts in deciding whether other organizations are "churches" within the meaning of the Code.

In De La Salle Institute v. United States, 195 F.Supp. 891 (N.D. Cal. 1961) the court examined the activities of an incorporated religious order that operated a winery as well as parochial schools and a novitiate. The court concluded that when Congress used the term "church" it intended to convey a more limited idea than is conveyed by the term "religious organization" and held that the order was not a "church." Noting that certain incidental "church-like" activities could not make the order a church the court stated:

The chapels at plaintiff's parochial schools and novitiate are "churches." A corporation which did no more than operate one or more of these [chapels] would obviously be a "church" within the meaning of the statutes being interpreted. But plaintiff does much more than this. The operation of the chapels is incidental to plaintiff's principal activities, although very important to plaintiff's members. The tail cannot be permitted to wag the dog.

In Chapman v. Commissioner, 48 T.C. 358 (1967), the Tax Court held that an organization that conducted a Missionary-Dentistry program in foreign countries was not a church. In construing the phrase "church or convention or association of churches" contained in section 170(b)(A)(1)(i) of the Code the court examined the legislative history of section 170(b) and determined that a more limited concept was intended by Congress for the term "church" than that denoted by the term "religious organization." The court stated that Congress did not intend the term "church" to be used in a generic or universal sense, but rather in the sense of a "denomination" or "sect." The Tax Court went on to hold

that an evangelical organization whose primary function was to spread the Gospel of Christianity throughout the world was not an organization which could be considered a "church" within the intendment of section 170(b)(1)(A)(i). The court emphasized that
(1) the organization's individual members maintained their affiliation with various other churches; (2) the organization was interdenominational and sought converts only to the principles of Christianity generally, rather than

to a specific sect or denomination; (3) the organization did not ordain its own ministers; and, (4) the conducting of religious services by its members was not conclusive per se that the organization was a church.

In American Guidance Foundation v. United States, 490 F. Supp. 304 (D.C. 1980), the court referred to the fourteen criteria which are applied by the Service on an ad hoc basis to individual organizations. The fourteen points are:

1. A distinct legal existence
2. A recognized creed and form of worship
3. A definite and distinct ecclesiastical government
4. A formal code of doctrine and discipline
5. A distinct religious history
6. A membership not associated with any other church or denomination
7. An organization of ordained ministers
8. Ordained ministers selected after completing prescribed studies
9. A literature of its own
10. Established places of worship
11. Regular congregations
12. Regular religious services
13. Sunday schools for religious instruction of the young
14. Schools for the preparation of its ministers.

Referring to these fourteen points, the court in American Guidance stated (id. at 306):

While some of these are relatively minor, others, e.g. the existence of an established congregation served by an ordained ministry, the provision of regular religious services and religious education for the young, and the dissemination of a doctrinal code, are of central importance.

In Foundation for Human Understanding v. Commissioner, 88 T.C. 1341 (1987), the U.S. Tax Court held that the taxpayer there was a church. The opinion stated that "At a minimum, a church includes a body of believer or communicants that assembles regularly in order to worship. ................Where bringing people together for worship is only an incidental part of the

activities of a religious organization, those limited activities are insufficient to label the entire organization a church." Id. at 1357.

Thus, both the courts and the Service agree that there is no bright-line test as to whether an organization is a religious organization or a church.  Such a determination must be made based on the facts and circumstances of each case.

Both the court in De LaSalle Institute, supra, and the court in Chapman, supra, stated that the conducting of religious services by an organization is not conclusive per se that an organization is a church. The De La Salle Institute court held that the incidental "church-like" activities of the religious teaching order could not make the order a church. The De LaSalle Institute court added that "the tail cannot be permitted to wag the dog." The Chapman court held that while the conducting of religious

36

services by an organization is a factor in the determination of whether an organization is a church, it is not conclusive per se that an organization is a church. Therefore, even if part of X's activities are "church-like" activities, such a fact is not dispositive of the church classification issue.

The current record clearly demonstrates that the critical facts existing when X received its church ruling have dramatically changed. Most important, X no longer possesses the regular church services which have been held to be a prerequisite for church status. It no longer has the "minimum" for church status—"a body of believers or communicants that assembles regularly in order to worship." Foundation for Human Understanding v. Commissioner, supra at 1357. X no longer has a defined congregation of worshipers, nor an established place of worship, nor regular religious services.

Nor does X have other substantial church characteristics. Its "ministers" officiated at no more than ................................weddings or other ministerial events or sacerdotal functions during the years. At most, admittedly "sporadic" lectures, discussions, and counseling sessions, for groups of less than 30 people, were apparently held at a ............................................................................................... X owned as an investment property. While the documentary evidence was often contradictory, it appears that X staff conducted approximately seminars per year (some of them in other cities), with the majority lasting less than one day. Substantial charges were made for these seminars.

By comparison, for the period under examination, X's broadcasting and publishing expenditures were its principal expenditures. X produced C L programs and disseminated them around the country over numerous stations. When "administrative," "equipment," and "miscellaneous" expenditures are allocated, over 90 percent of X's expenditures were for C, its one L show. Thus the non-associational L show totally dwarfed and eclipsed the de minimis associational activities.

Moreover, this description does not take into account the $y real estate investment activity, or the roughly $y in support for the profit- seeking K. As explained above, virtually none of the gain from these businesses was used or programmed for "associational aspects" of X. Instead, all of this gain was devoted to expanding the K, whose mission is to produce, disseminate, and promote programming that in general has nothing to do with religion.

The court's decision in Foundation of Human Understanding v. Commissioner, supra, illustrates that a religious organization may "evolve" into a church over time. Hence, it stands to reason that a church may likewise evolve into an organization that no longer can be considered a church. That evolution occurred here. The examination discovered no evidence that during theperiod, X had a membership not associated with any other church or denomination, or had an established regular congregation as it did when it held weekly services at its former Y facility during thes. Thus, the customary associational aspects of church worship, involving a body of believers or communicants that assembles regularly in order to worship, are not present in this case.

X's counsel has cited media reports that churches are posting weekly services on their N's or broadcasting them on the L for outreach purposes, and has asserted that a "great number of X's congregants attend and worship by L or N." However, we do not find this argument to be convincing, in part because X no longer conducts weekly services as it did in the s when it received its church ruling. While the C L shows that are aired on the L have some religious content and seek to disseminate X's views and doctrines, religious L programming is not sufficient to constitute a church. Foundation for Human Understanding v. Commissioner, supra; Via v. Commissioner, 68 T.C.M. 212 (1994).

Accordingly, based upon all the facts and circumstances, X is not a church within the meaning of sections 509(a)(1) and 170(b)(1)(A)(i) of the Code. Although X's activities included holding occasional lectures, seminars, and counseling sessions at which religious themes were discussed, X was during the years(and is now) predominately a religious

broadcaster and, through its subsidiary, a J. As the court stated in De La Salle Institute, supra, "the tail cannot be permitted to wag the dog."

## IV.   COURT OF FEDERAL CLAIMS & U.S. TAX COURT RULES OF PRACTICE

### RCFC 52.1 (c) - Rule of Federal Court of Claims 52.1. Administrative Record

(a)   In General. When proceedings before an agency are relevant to a decision in a case, the administrative record of those proceedings must be certified by the agency and filed with the court.

(b)   Time for Filing. The court may establish a time for filing the administrative record by order.

(c)   Motions for Judgment on the Administrative Record.

(1)   Initial Motion. Absent an order by the court establishing a different procedure, a party may move for partial or other judgment on the administrative record and must include in its motion or supporting memorandum a statement of facts that draws upon and cites to the portions of the administrative record that bear on the issues presented to the court.

(2)   Response. A party opposing a motion based on the administrative record must include in any response a counter-statement of facts that similarly draws upon and cites to the administrative record.

(3)   Effect of a Motion. Unless otherwise provided by order of the court, a motion under this rule for judgment on the administrative record obviates the requirement for the filing of an answer under RCFC 12(a)(1).

(Added June 20, 2006; as amended Nov. 3, 2008, July 2, 2012.)

### Rules Committee Notes
### 2006 Adoption

RCFC 52.1 has no FRCP counterpart. The rule replaces an earlier rule, RCFC 56.1, that applied certain standards borrowed from the procedure for summary judgment to review of an agency decision on the basis of an administrative record. That incorporation proved to be confusing in practice because only a portion of the summary judgment standards were borrowed. Summary judgment standards are not pertinent to judicial review upon an administrative record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1355–57 (Fed. Cir. 2005). Specifically, the now- repealed Rule 56.1 did not adopt the overall standard that summary judgment might be appropriate where there were no genuine issues of material fact. See RCFC 56(c). Nonetheless, despite this omission, parties, in moving for judgment on the administrative record under the prior rule, frequently would contest whether the administrative record showed the existence of a genuine dispute of material fact. To avoid this confusion, the new rule omits any reference to summary judgment or to the standards applicable to summary judgment.

Cases filed in this court frequently turn only in part on action taken by an administrative agency. In such cases, the administrative record may provide a factual and procedural predicate for a portion of the court's decision, while other elements might be derived from a trial, an evidentiary hearing, or summary judgment or other judicial proceedings. This rule applies whether the court's decision is derived in whole or in part from the agency action reflected in the administrative record.

The standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases. The rule does not address those standards or criteria. Correspondingly, any motion for correction or supplementation of the administrative record should be made on the basis of either the specific law to be applied in the particular case or generally applicable principles of administrative law.

### 2008 Amendment

The language of RCFC 52.1 has been amended to conform to the general restyling of the FRCP.

**2012 Amendment**

RCFC 52.1(c) has been amended to clarify that absent a court order directing otherwise, the filing of a motion for judgment on the administrative record obviates the requirement for the filing of an answer to the complaint.

**Tax Court Rule 142(a)(1)**

RULE 142
BURDEN OF PROOF
(a) General:

(1) The burden of proof shall be upon the petitioner, except as otherwise provided by statute or deter-mined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, it shall be upon the respondent. As to affirmative defenses, see Rule 39.

(2) See Code section 7491 where credible evidence is introduced by the taxpayer, or any item of income is reconstructed by the Commissioner solely through the use of statistical information on unrelated taxpayers, or any penalty, addition to tax, or additional amount is determined by the Commissioner.

(b) Fraud: In any case involving the issue of fraud with intent to evade tax, the burden of proof in respect of that issue is on the respondent, and that burden of proof is to be carried by clear and convincing evidence. Code sec. 7454(a).

(c) Foundation Managers; Trustees; Organization Managers: In any case involving the issue of the knowing conduct of a foundation manager as set forth in the provisions of Code section 4941, 4944, or 4945, or the knowing conduct of a trustee as set forth in the provisions of Code section 4951 or 4952, or the knowing conduct of an organization manager as set forth in the provisions of Code section 4912or 4955, the burden of proof in respect of such issue is on the respondent, and such burden of proof is to be carried by clear and convincing evidence. Code sec. 7454(b).

(d) Transferee Liability: The burden of proof is on the respondent to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax. Code sec. 6902(a).

(e) Accumulated Earnings Tax: Where the notice of deficiency is based in whole or in part on an allegation of accumulation of corporate earnings and profits beyond the reasonable needs of the business, the burden of proof with respect to such allegation is determined in accordance with Code section 534. If the petitioner has submitted to the respondent a statement which is claimed to satisfy the requirements of Code section 534(c), the Court will ordinarily, on timely motion filed after the case has been calendared for trial, rule prior to the trial on whether such statement is sufficient to shift the burden of proof to the respondent to the limited extent set forth in Code section 534(a)(2).

**Tax Court Rule 210(b)(12) - General**

\*   \*   \*

(b) Definitions: As used in the Rules in this Title—

\*   \*   \*

39

(12) ''Administrative record'' includes, where applicable, the request for determination, all documents submitted to the Internal Revenue Service by the applicant in respect of the request for determination, all protests and related papers submitted to the Internal Revenue Service, all written correspondence between the Internal Revenue Service and the applicant in respect of the request for determination of such protests, all pertinent returns filed with the Internal Revenue Service, and the notice of determination by the Commissioner.

**Tax Court Rule 217(a)-(b)**

RULE 217. DISPOSITION OF ACTIONS FOR
DECLARATORY JUDGMENT
(a) General: Disposition of an action for declaratory judgment which involves the initial qualification of a retirement plan or the initial qualification or classification of an exempt organization, a private foundation, or a private operating foundation will ordinarily be made on the basis of the administrative record, as defined in Rule 210(b)(12). Only with the permission of the Court, upon good cause shown, will any party be permitted to introduce before the Court any evidence other than that presented before the Internal Revenue Service and contained in the administrative record as so defined. Disposition of an action for declaratory judgment involving a revocation, a gift valuation, or the eligibility of an estate with respect to installment payments under Code section 6166 may be made on the basis of the administrative record alone only where the parties agree that such record contains all the relevant facts and that such facts are not in dispute. Disposition of a governmental obligation action will be made on the basis of the administrative record, augmented by additional evidence to the extent that the Court may direct.

(b) Procedure: (1) Disposition on the Administrative Record: Within 30 days after service of the answer, the parties shall file with the Court the entire administrative record (or so much thereof as either party may deem necessary for a complete disposition of the action for declaratory judgment), stipulated as to its genuineness. If, however, the parties are unable to file such a stipulated administrative record, then, not sooner than 30 days nor later than 45 days after service of the answer, the Commissioner shall file with the Court the entire administrative record, as defined in Rule 210(b)(12), appropriately certified as to its genuineness by the Commissioner or by an official authorized to act for the Commissioner in such situation. See Rule 212, as to the time and place for submission of the action to the Court. The Court will thereafter issue an opinion and declaratory judgment in the action. In an action involving the initial qualification of a retirement plan or the initial qualification or classification of an exempt organization, a private foundation, or a private operating foundation, the Court's decision will be based upon the assumption that the facts as represented in the administrative record as so stipulated or so certified are true and upon any additional facts as found by
the Court if the Court deems that a trial is necessary. In an action involving a gift valuation, the eligibility of an estate with respect to installment payments under Code section 6166, a revocation, or the status of a governmental obligation, the Court may, upon the basis of the evidence presented, make findings of fact which differ from the administrative record.
(2) Other Dispositions Without Trial: In addition, an action for declaratory judgment may be decided on a motion for a judgment on the pleadings under Rule 120 or on a motion for summary judgment under Rule 121 or such an action may be submitted at any time by notice of the parties filed with the Court in accordance with Rule 122.
(3) Disposition Where Trial Is Required: Whenever a trial is required in an action for declaratory

judgment,
such trial shall be conducted in accordance with the Rules contained in Title XIV, except as
otherwise provided in this Title.

*V.*    *LEGISLATIVE HISTORY*

**S. REP. NO. 94-938, 94TH CONG., 2D SESS. 588 (1975), U.S. CODE CONG. & AD. NEWS 1976, 2897, 4012**

Calendar No. 891

| 94TH CONGRESS<br>2d Session | SENATE | REPORT<br>No. 94-938 |
|---|---|---|

TAX REFORM ACT OF 1976

———

R E P O R T

OF THE

COMMITTEE ON FINANCE
UNITED STATES SENATE

ON

H.R. 10612

JUNE 10 (legislative day, JUNE 3), 1976.—Ordered to be printed

———

U.S. GOVERNMENT PRINTING OFFICE

73-361 O                     WASHINGTON : 1976

VII

IV. General Explanation—Continued
   T. Energy-related provisions—Continued        Page
       10. Repeal of manufacturers excise tax on buses and bus
           parts_____ 578
       11. Excise tax on rerefined lubricating oil_____ 580
       12. Exemption from the retailers excise tax on special
           motor fuels for certain nonhighway use_____ 581
       13. Oil swaps_____ 582
   U. Tax-exempt organizations_____ 585
       1. Declaratory judgments as to tax-exempt status as
           charitable, etc., organization_____ 585
       2. Modification of transition rule for sales of property by
           private foundations_____ 591
       3. Private foundation set-asides_____ 593
       4. Reduction in mandatory payout rate for private
           foundations_____ 596
       5. Reduction of private foundation excise tax based on
           investment income_____ 597
       6. Extension of time to conform charitable remainder
           trusts for estate tax purposes_____ 599
       7. Income from fairs, expositions and trade shows_____ 601
 V. Areas for further study_____ 604
VI. Costs of carrying out the bill and vote of the committee in reporting the
   bill, as amended_____ 605
VII. Changes in existing law_____ 607

42

588

qualified charitable contribution donee (sec. 170(c)(2)), as a private foundation (sec. 509), or as a private operating foundation (sec. 4942 (j)(3)). A suit under this provision can be brought only by the organization whose qualification or status is at issue.

The House bill is the same as the committee amendment, except for the courts which are to have jurisdiction (U.S. Tax Court and all Federal district courts, under the House bill) and the effective date.

The courts are to have jurisdiction to make a declaration with respect to the status of the organization and any such declaration is to have the force and effect of a decision or final judgment and is to be reviewable as such.

The court is to base its determination upon the reasons provided by the Internal Revenue Service in its notice to the party making the request for a determination, or based upon any new argument which the Service may wish to introduce at the time of the trial. The burden-of-proof rules are to be developed by the courts under their rule-making powers. Insofar as is practical, those rules should conform to the rules that the Tax Court develops with regard to declaratory judgment suits as to retirement plans, under section 7476 of the Code. (See e.g., title XXI of the Tax Court's Rules of Practice and Procedure.)

The judgment of the court in a declaratory judgment proceeding is to be binding upon the parties to the case based upon the facts as presented to the court [7] in the case for the year or years involved. This, of course, does not foreclose Service action for later years (within the limits of the legal doctrines of estoppel and *stare decisis*) if the governing law or the organization's operations have changed since the years to which the declaratory judgment applies, or (especially in the case of a new organization) if the organization does not in operation meet the requirements for qualification.

This provision is intended to facilitate relatively prompt judicial review of the specified types of exempt organization issues; it is not intended to supplant the normal avenues of judicial review (redetermination of a deficiency or suit for refund of taxes) where those normal procedures could be expected to provide opportunities for prompt determinations. Consequently, it is expected that the courts will not entertain a declaratory judgment suit with regard to a period for which a notice of deficiency has already been issued, except upon a showing by the organization that the declaratory judgment route is likely to substantially reduce the time necessary to attain a final judicial review of the Service's determination. Also, it is expected that in general a court which has accepted pleadings in a declaratory judgment proceeding will yield to a court which has accepted pleadings in a redetermination of deficiency or a tax refund suit, unless the proceedings in the declaratory judgment suit are so far along that it would facilitate interests of prompt justice for the latter court to yield to the former. The committee's decisions are not to be permitted to create conflicting determinations on the parts of different trial courts with regard to any of the questions that may be determined in a declaratory

---

[7] In many cases, this would be essentially the administrative record before the Internal Revenue Service; see, e.g., paragraphs (5) and (6) of the prefatory note to title XXI of the Tax Court's Rules of Practice and Procedure.